IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

UNITED STATES OF AMERICA                                    PLAINTIFF

v.                          Case No. 4:10CR00336 SWW

DAVID BRIAN ALLEN                                           DEFENDANT

## PROPOSED FINDINGS AND RECOMMENDATIONS

## <u>INSTRUCTIONS</u>

The following recommended disposition has been sent to United States District Court

Judge Susan Webber Wright.  Any party may serve and file written objections to this

recommendation.  Objections should be specific and should include the factual or legal basis

for the objection.  If the objection is to a factual finding, specifically identify that finding and

the evidence that supports your objection. Failure to file timely objections may result in

waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different,

or additional evidence, and to have a hearing for this purpose before the District Judge, you

must, at the same time that you file your written objections, include the following:

1.    Why the record made before the Magistrate Judge is inadequate.

2.    Why the evidence proffered at the hearing before the District Judge (if such a
      hearing is granted)  was not offered at the hearing before the Magistrate Judge.

3.    The details of any testimony desired to be introduced at the hearing before the
      District Judge in the form of an offer of proof, and a copy, or the original, of
      any documentary or other non-testimonial evidence desired to be introduced
      at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional

evidentiary hearing, either before the Magistrate Judge or before the District Judge.

## DISPOSITION

Allen is charged by indictment with violation of 18 U.S.C. § 371, conspiracy to pass counterfeit checks. He is set for trial before Judge Wright on April 16, 2012, at 9:30 a.m. On September 15, 2011, Allen filed a Motion to Suppress (DE #47). The matter was referred to the undersigned for disposition. A hearing was held on October 17, 2011, and the parties were provided the opportunity to submit post-hearing briefs. Those briefs have now been submitted and reviewed by the Court, and this matter is ready for disposition. Based on the testimony and exhibits presented at the evidentiary hearing, along with the various submissions by the parties, Defendant Allen's motion to suppress should be denied.

## 1. Background

On December 1, 2010, David Allen and Tangela Dean[1] were arrested beside a black 1997 Lexus ES300 by detectives and officers of the Little Rock Police Department (LRPD) as they were loading items into the car and leaving the Comfort Inn located at 300 Markham Center Drive in Little Rock, Arkansas. Contemporaneous with the arrest was the search and seizure of some items inside the vehicle, along with items housed on a bellman luggage cart that were being loaded into the vehicle. Seized inside the vehicle were a laptop computer and approximately $10,000 in currency;[2] seized beside the vehicle on the bellman luggage cart

---

[1]Dean was arrested on active misdemeanor warrants from the Little Rock and North Little Rock Police Departments.

[2]The hearing testimony is that the money was found inside the sole of a shoe located in the trunk of the car. Government's Exhibit 8 notes that a total of $10,507 was obtained. Other

were another laptop computer, a combination printer/scanner/copier, flash drives, and blank commercial and personal checks.[3]  On Allen's person were cash, a driver's license and a social security card in the name of Darryl Brown.[4]

Rusty Rothwell, a financial crimes detective with the LRPD testified that, on December 1, 2010, he received information that three individuals were arrested in Bryant and that a Bryant detective requested to speak with a Little Rock financial crimes detective. From that contact, Rothwell learned that the three suspects had been captured after fleeing from the police in a vehicle and on foot.  One of the suspects had a hotel receipt in his pocket for the Comfort Inn located on Markham Street in Little Rock.[5]  Rothwell and his partner, Fred Lee, subsequently went to the Comfort Inn and spoke with the clerk.

The clerk told Detectives Rothwell and Lee that two rooms—Rooms 305 and 215—were rented to an individual named Darryl Brown from Jackson, Mississippi.  The

---

items included six (6) Arkansas drivers license/identification cards; three (3) Florida drivers license cards; three (3) Greyhound bus tickets; three (3) manila envelopes containing torn counterfeit commercial checks; a Discover credit card statement bearing the name of neither Allen nor Dean; and various copies of checks, pay stubs, and account statements that belonged to other people and businesses.  All evidence seized was turned over to United States Secret Service Special Agent Andrew Kiger.

[3]The checks were from Wood Brand LLC, Winrock Farms, Inc., and P&R Dist Inc.  (DE # 56, at 2) Also the computer equipment (a Hewlett Packard G71 Laptop and four flash drives) were located in a computer bag that was within a duffle bag that was on the bellman luggage cart.  Id. at 3.

[4]The Defendant notes the name as Darryl Brown while the Government lists the name as Darryll Brown.

[5] Defendant contends the receipt found on the suspect was for room 305 while the Government maintains that it was for room 215.  In any event, both rooms–305 and 215–were registered to Darryl Brown.

Clerk also stated that someone was still in Room 215.  While they were sitting in Detective Lee's vehicle discussing their plan of action, the detectives observed a man walk out of the hotel smoking a cigarette and carrying a white plastic bag.  The detectives observed the man, later identified as David Allen, walk around the hotel with the bag and then return without it.  The detectives exited the vehicle and asked the clerk to call them if something came up.  The clerk then informed the detectives that the man who had just exited and re-entered the hotel was the man who rented the rooms.  Thereafter, Detective Lee went behind the hotel to the dumpster and retrieved the plastic bag he believed Allen had discarded.  Lee testified that he knew it was the same bag, introduced at the hearing as Government's Exhibit 2, because the dumpster contained several large "Hefty size bags," but only contained one smaller bag tied up like the one the man had in his hand.  There was left over food and a bunch of torn up checks inside the bag.  The detectives left with the bag and headed to the police substation to prepare a search warrant.

Upon arrival to the substation, Detective Lee contacted the Bryant Police detective, who emailed over copies of the checks found on the suspects.  Portions of those checks matched those found in the plastic bag retrieved from the dumpster.  *See* Government's Exhibits 2A and 3.  Before completing the information for a search warrant, the detectives received a call from the clerk that the man was checking out of the hotel.  En route back to the hotel, the detectives contacted uniformed patrol officers to meet them at the hotel.[6]

---

[6]Detectives Lee and Rothwell were not in uniform or a marked police car.

4

Detective Rothwell advised the patrolmen that they were probably going to need to stop the car.  Within two to three minutes of arrival, Allen and Dean were observed leaving the hotel with the bellman luggage cart, whereby Allen began loading items from the cart into the black Lexus.

Detective Rothwell testified that he chose to stop the vehicle before it left because there had been a police chase and subsequent foot chase in Bryant.  Rothwell was the first to make contact with Dean and Allen.[7]  Dean was sitting in the driver's seat,[8] and Allen was at the back of the vehicle, placing items into it.  Rothwell directed Allen to place his hands onto the vehicle; he patted Allen down and took him into custody.  According to Rothwell, Allen was under arrest.  Rothwell believed that he, along with Officer Trammell, escorted Allen to the police car.  He was unsure whether Allen was handcuffed because he did not have any handcuffs on him at the time.  According to Detective Rothwell, the patdown yielded a little over $500 and a Mississippi identification in the name of one David Allen.  The search of the vehicle and bellman luggage cart yielded a couple of computers, an all-in-

_____

[7]Detective Lee testified that, upon arrival at the hotel, he went inside to get the room receipts while Rothwell stayed outside.  When he walked out, Rothwell and the uniformed officers had already made contact with Dean and Allen.  Further, Lee did not take part in the arrest or search, but he did observe that there was a luggage cart with bags on it; that the trunk of the Lexus was open; that the doors of the Lexus were open; that things were being loaded into the vehicle; and that there were some items still on the luggage cart.  Detective Lee did notice a combination copier/scanner on the cart.  Based on his knowledge and experience, Detective Lee stated that such an item was known to be used in counterfeit production.

[8]LRPD Officer Tory Trammell testified that she took Angela Dean into custody and placed her into the patrol car.  Officer Trammell completed the LRPD Tow Vehicle Form.  She further testified that Dean was placed into handcuffs per LRPD policy, and she assumes Allen was as well.

one printer/scanner/copier, some checks, check stock, $10,000, and other items.  Based on

his knowledge and experience, Detective Rothwell testified that the items seized were

consistent with evidence found in counterfeit cases.  Upon examination, Detective Rothwell

testified that all of the items, including the items on the bellman luggage cart, were taken into

inventory according to the policy of the LRPD.[9]  Detective Rothwell testified that the officers

would not have left any of the suspects' property in the parking lot.

## 2.  Argument

Allen seeks suppression of any evidence resulting from the arrest, and it is his

contention that (1) officers lacked probable cause to arrest him and (2) there was no valid

search incident to arrest.  The Government insists that the LRPD Detectives had probable

cause to arrest Allen, and as such, the search was incident to a lawful arrest and valid under

the automobile exception.  Further, the Government contends that the evidence would have

been inevitably discovered pursuant to an inventory search because the car was towed to the

impound lot.

## 3.  Discussion

A.      Allen's Arrest

---

[9]According to the LRPD policy, the Department has authority to impound a vehicle
pursuant to Ark. Code Ann. § 27-50-1201 *et seq.* when the driver of such vehicle is taken into
policy custody and is unable to make a legitimate disposition of the vehicle.  All impounded
vehicles are inventoried.  The policy goes on to state that inventory searches are conducted in
order to locate and identify items in a vehicle in order to: "a) protect the owner's property; b)
protect the police officer, the department, and the wrecker service from subsequent claims of loss
of stolen property; and c) inventories of vehicles will not be conducted for the purpose of
discovering evidence."  *See* Government's Exhibit 7.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *United States. v. Jones*, 535 F.3d 886, 890 (8th Cir. 2008) (citing *Devenpeck v. Alford*, 534 U.S. 146 (2004)). Probable cause is determined by asking

> [w]hether, at the moment the arrest was made, . . . the facts and circumstances within (the arresting officers') knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that (the suspect) had committed or was committing an offense.

*United States v. Neumann*, 585 F.2d 355, 357 (8th Cir. 1978) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). "A 'probability or substantial chance of criminal activity, rather than an actual showing of criminal activity' is sufficient." *United States v. Jones*, 535 F.3d at 890 (citing *United States v. Torres-Lona*, 491 F.3d 750, 756 (8th Cir. 2007)). In determining whether probable cause existed, the Court looks to the "objective facts available for consideration by the agencies or officers participating in the arrest," *i.e.*, the collective knowledge of the arresting officers. *United States v. Neumann*, 585 F.2d at 357 (citing *United States v. Stratton*, 453 F.2d 36, 37 (8th Cir.), *cert. denied*, 405 U.S. 1069 (1972). It is the cumulative effect of the evidence at the time of the arrest which determines probable cause. *Id.* at 358 (citing *United States v. Peep*, 490 F.2d 903, 906-07 (8th Cir. 1974)).

In this instance, the Court finds that the LRPD had probable cause to arrest Allen. Detectives Lee and Rothwell had knowledge from Bryant police officers that three suspects

had been arrested for trying to pass counterfeit checks.   Checks and a receipt for the Markham Road Comfort Inn were found with one suspect.   The detectives went to that Comfort Inn and learned from the clerk that two rooms—Rooms 215 and 305—had been registered to the same person, Mr. Darryl Brown.   Detectives saw a man exit the hotel with a plastic bag that he threw into the dumpster.   The clerk identified the man, later identified as Defendant Allen,  as Darryl Brown.   Detective Lee retrieved the bag matching the one carried by Allen from the dumpster, and in it, he found torn checks.   The check fragments matched those seized from the people arrested in Bryant.   Upon his arrest, Allen had identification for Darryl Brown on his person.   Although "mere association with a known or suspected criminal . . . does not create probable cause to arrest,"  *see United States v. Everroad*, 704 F.2d 403, 406 (8th Cir. 1983), a reasonable officer knowing these facts and circumstances would have cause to conclude there was a "substantial chance" Allen had committed or was committing an offense.   Therefore, detectives had probable cause to arrest him.

B.      Search and Seizure

Allen argues that any evidence searched and seized should be suppressed because the arrest was unlawful.   Alternatively, he argues that, even if the arrest was lawful, the search of the bellman luggage cart incident to the arrest was unconstitutional because Allen was handcuffed and in the back of a locked and guarded patrol car when the search occurred. (DE # 48, at 5-9) The Government submits that the search was valid as a search incident to arrest, under the automobile exception, and as "inevitable discovery pursuant to an inventory

8

search."  (DE #56, at 1)

1.  Search incident to arrest

"[S]earches conducted outside the judicial process, without prior approval by a judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions."  *Arizona v. Gant*, 556 U.S. 332, ____, ____, 129 S. Ct. 1710, 1716 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). A search incident to arrest is one of those exceptions.  A search incident to arrest is constitutional "(1) if the arrestee is within reaching distance of the vehicle during the search, or (2) if the police have reason to believe that the vehicle contains 'evidence relevant to the crime of arrest.'"  *Davis v. United States*, ___ U.S. ___, 131 S. Ct. 2419, 2425 (2011) (quoting *Arizona v. Gant*, 129 S. Ct. at 1719).

The Government does not dispute that Allen was handcuffed and placed in the back of a patrol car when the items in the car and on the bellman luggage cart were searched and seized.  (DE #56, at 5)  However, it argues the "officers had reason to believe that evidence of the crime would be located in the car based on how counterfeit checks are produced–that is, . . . typically with a laptop and a printer.  Officers could see a printer on the luggage cart. There was also a computer in the car."  *Id.* at 5-6.  The Court agrees.

"Unquestionably, when a person is lawfully arrested, the police have the right, without a search warrant, to make a contemporaneous search of the person of the accused for weapons or for the fruits of or implements used to commit the crime."  *Gullett v. United States*, 387 F.2d 307, 311-12 (8th Cir. 1967) (quoting *Preston v. United States*, 376 U.S. 364,

367 (1964)).  The fact that Allen was handcuffed and in the back of a patrol car at the time

of the search is of no moment because, pursuant to *Gant*, the question is whether the officer

reasonably believes the individual in custody can access his car at the time of the search <u>or</u>

"that evidence of the offense for which he was arrested" might be found within the vehicle.

*Arizona v. Gant*, 129 S. Ct. at 1719.  *See also United States v. Norwood*, 2010 WL 1417673

(E.D. Ark. Apr. 1, 2010) (arresting officers had reason to believe that car contained evidence

of the crime for which defendant was arrested and thus had probable cause to search every

part of the vehicle and its contents); *but see United States v. Bronner*, 2009 WL 1748533

(Minn. June 19, 2009) (holding search incident to arrest exception does not apply because

there was no reason to believe occupants might access the truck during the search or that the

truck contained evidence of the offense for which arrested—driving with a revoked license).

The latter applies in this case.

     Here, officers saw Allen at the vehicle, with the trunk up and the vehicle doors open.

Bags were in the vehicle, and he was loading other items from the bellman luggage cart into

the vehicle.  Included, and in plain view to the officers, was an all-in-one combination

printer/scanner/copier, which was known by the detectives to be an instrument used to

produce counterfeit checks.[10]  The officers also knew that Allen had thrown away a plastic

---

     [10]The Court is not suggesting here that a combination printer/scanner/copier is by itself clearly incriminating or that the "plain view" doctrine applies to the facts and circumstances herein.  Nonetheless, the officers' view of this item, along with other information and knowledge they possessed and their experience as law enforcement officers, produced the probable cause necessary for a search incident to arrest.  *See United States v. Wells*, 347 F.3d 280 (8th Cir. 2003).

bag that contained torn-up checks from the same companies as those retrieved by the Bryant police in their arrest earlier. *See United States v. Norwood*, 2010 WL 1417673, at *2-3 (quoting *United States v. Wells*, 347 F.3d 280, 288 (8th Cir. 2003)) ("Probable cause may be based on the collective knowledge of all law enforcement officers involved in an investigation and need not be based solely upon the information within the knowledge of the officer on the scene if there is some degree of communication.") Thus, police had a reasonable basis to believe a search of the vehicle could uncover evidence relevant to Allen's arrest for conspiracy to pass counterfeit checks.

Allen tries to make a distinction between items already in the vehicle and those on the bellman luggage cart; however, this distinction is meritless regarding the search incident to arrest.  At the time of his arrest, Allen was loading the items on the cart into the vehicle. According to Allen, the officers approached him and his companion and handcuffed them before placing them in the back of a locked police car.  He states the search took place thereafter.  There were, according to Allen, ten to fifteen (10 - 15) officers involved in his arrest.  According to officers at the hearing, however, only five (5) participated in this incident.

It matters not whether Allen was capable of reaching the contents of the bellman luggage cart at the time of the search. *See New York v. Belton*, 453 U.S. 454, 461-62 n. 5

(1981);[11] *United States v. Morales*, 923 F.2d 621, 626 (8th Cir. 1991) (quoting *United States v. Palumbo*, 735 F.2d 1095, 1097 (8th Cir. 1984) ("'Accessibility, as a practical matter, is not the benchmark'" for assessing the search).  At the time of arrest, the cart was in Allen's immediate control and within his reach.  The officers seized the vehicle and the items on the bellman luggage cart after the arrests and searched their contents; thus, the search was neither remote in time nor place from the arrest, and since the police had probable cause to effect the arrest and believed evidence of criminal activity was contained therein, the warrantless search of the contents of the bag and the seizure of the other items on the cart was justified as a search incident to arrest.  *See United States v. Wright*, 577 F.2d 378, 380 (6th Cir. 1978) ("It is the law of this Circuit that once the right to search attaches, it is not lost when the arrested person is handcuffed and unable to reach areas otherwise within his or her 'immediate control.'") (internal citations omitted); *United States v. Giles*, 536 F.2d 136, 140 (6th Cir. 1976) ("This Court has held that the warrantless search of a suitcase being held by a defendant at the time of his arrest is constitutionally valid[;] . . . There is no qualitative difference between the search of a suitcase seized by the police from the defendant himself, and the search of a suitcase seized as a result of the lawful search of defendant's automobile.

---

[11]*Belton* concerned the search of a zippered pocket of a jacket found in the passenger section of a car after four men in the car had been arrested and taken out of it. *New York v. Belton*, 453 U.S. at 456.  After holding that the passenger section of the car was within the arrestee's reach, the Court concluded that any container–including luggage, boxes, bags, clothing—found in a search of that area may also be searched.  *Id.* at 461.  The Court specifically rejected the argument that, by seizing the jacket, it was in the police officer's exclusive control.  *Id.* at 461 n.5.

In both situations the luggage is under the complete control of the police."); *United States v. Rojas*, 2001 WL 1568786 (S.D.N.Y. Dec. 7, 2001) (suppression of evidence not warranted because, at the time of the arrest of Garcia and Martinez, they were loading bags into the van, and based upon all knowledge and information known by law enforcement agents, a reasonable person would have been justified in believing that criminal activity was afoot; thus, once arrested, officers were free to search both men as well as their immediate surroundings).

### 2.  Automobile exception

Another exception to the general rule that warrantless searches are presumptively unreasonable is the automobile exception.  If law enforcement officials have probable cause to believe the vehicle contains contraband or other evidence of a crime before a search begins, the search is constitutionally permissible.  *See United States v. Fladten*, 230 F.3d 1083, 1085 (8th Cir. 2000).  "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place."  *Id.*

Here, the vehicle was parked in the hotel parking lot, and the officers saw Allen loading luggage and other items into the vehicle.  Facts known to the officers provided a substantial basis for them to conclude that other evidence may have been in the vehicle.  Since the officers had probable cause, the automobile exception allowed them to search the car and seize the items found there.  The Court does not believe, however, that this exception gave the officers probable cause to search and seize the items found on the bellman luggage

cart because those items were not yet inside the vehicle.[12]   Nevertheless, the search and

seizure of the items on the cart were permissible as a search incident to arrest or pursuant to

the inevitable discovery doctrine discussed below.

3.  Inevitable Discovery

Assuming *arguendo* that neither search incident to arrest nor the automoblie exception

applied, all items seized in this case would have been inevitably discovered because the car

was impounded and towed from the Comfort Inn and inventoried pursuant to LRPD policy.

"The inevitable discovery doctrine posits that if the prosecution can establish by a

preponderance of the evidence that information, otherwise to be suppressed under the

exclusionary rule, ultimately or inevitably would have been discovered by lawful means, then

the exclusionary rule does not apply." *United States v. James*, 353 F.3d 606, 616-17 (8th Cir.

2003) (citing *Nix v. Williams*, 467 U.S. 431, 444 (1984)).  The Eighth Circuit has articulated

that otherwise unconstitutionally found evidence "need not be suppressed if the two prongs

of the inevitable discovery doctrine are proved by a preponderance of the evidence: (1) there

is a reasonable probability the evidence would have been discovered by lawful means in the

absence of police misconduct, and (2) the government was actively pursing a substantial,

alternative line of investigation at the time of the constitutional violation." *United States v.*

*Munoz*, 590 F.3d 916, 923 (8th Cir. 2010) (citing *United States v. Thomas*, 524 F.3d 855, 858

---

[12]The undersigned finds that the officers, under the automobile exception, could
have seized the items on the bellman luggage cart, but they would have had to obtain a
warrant before searching the contents of the bags on the cart.

(8th Cir. 2008)).

The detectives were at the substation preparing information to seek a warrant for the rooms at the Comfort Inn when the clerk called to inform them that the man he identified as Darryl Brown was checking out.  They returned to the hotel and arrested Defendant Allen and his companion, after which the car was searched and the items were seized.  Detective Rothwell and Officer Tory Trammell testified at the hearing that the vehicle was towed pursuant to police policy.  There was also testimony at the hearing that the items still on the bellman luggage cart would have been retrieved and inventoried because they were personal items of the arrestees that would not have been simply left there in the hotel parking lot. Pursuant to LRPD policy, upon the arrest of the occupants, the vehicle would have been towed and inventoried; therefore, all the items—whether inside the car or still on the bellman luggage cart—would have been inevitably discovered.  *See Nix v. Williams*, 467 U.S. 431, 442-43 (1984); *United States v. Alvarez-Gonzalez*, 319 F.3d 1070, 1072 (8th Cir. 2003) (holding that "discovery of [defendant's] gun . . . was inevitable" because defendant would have been detained anyway and there was a "reasonable probability" that defendant's vehicle "would have been towed . . . and a routine inventory search of the vehicle would have been conducted," during which "the firearm would have been inevitably discovered").

## 4.  Conclusion

Based on the foregoing, it is the undersigned's recommendation that the Motion to Suppress, DE #48, be denied.

IT IS SO ORDERED this 17th day of February, 2012.

_____
UNITED STATES MAGISTRATE JUDGE